UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-1573(DSD/SRN)

Upsher-Smith Laboratories, Inc.,

Plaintiff,

v.

**ORDER**

Federal Insurance Company,

defendant.

Gary M. Hansen, Esq., Edward F. Fox, Esq., Jay A. Johnston, Esq. and Oppenheimer, Wolff & Donnelly, 3400 Plaza VII Building, 45 South Seventh Street, Minneapolis, MN 55402, counsel for plaintiff.

Jerome B. Abrams, Esq., Lauris A. Heyerdahl, Esq. and Abrams & Smith, 625 Marquette Avenue, Suite 700, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court on the cross-motions of the parties for summary judgment. For the following reasons, the court will grant defendant's motion for summary judgment [Doc. No. 24] and deny plaintiff's motion for summary judgment [Doc. No. 26].[1]

[1] The court also will grant plaintiff's motion to supplement the affidavit of Jay A. Johnston [Doc. No. 37]. The court, however, cannot conclude that the granting of that motion is determinative to the resolution of the present matter. That is, the court does not believe that the resolution of the underlying FTC proceeding in plaintiff's favor impacts the court's construction and application of the relevant provisions of the insurance policy in dispute in the present cross motions for summary judgment.

FILED AUG 30 2002
RICHARD D. SLETTEN, CLERK
Judgment Ent'd
Deputy Clerk's Initials

## BACKGROUND

This case involves an insurance coverage action. Plaintiff is seeking a declaration of the duty to defend under defendant Federal Insurance Company's ("Federal") Insurance Policy No. 7948-49-36 ("the policy"), which included an Insured Organization Coverage Endorsement set forth in Federal Endorsement Form 14-02-2287, for a complaint filed by the Federal Trade Commission ("FTC") and more than forty private civil litigation actions. Defendant contends that since there is an exclusion in the policy directly excluding coverage, it has no duty to defend plaintiff.

### A. The Underlying FTC Proceeding

Upsher-Smith Laboratories Inc. ("Upsher-Smith") is a Twin Cities based pharmaceutical company that develops and manufactures a wide range of products. In the mid 1990s, Upsher-Smith developed a generic alternative to a well-known potassium supplement which was sold by Schering-Plough Corporation ("Schering"). During the regulatory review process of Upsher-Smith's generic alternative, Schering commenced a lawsuit in New Jersey alleging that the formulation of Upsher-Smith's product infringed upon a patent that Schering held. After many years of litigation, the parties settled the patent infringement action in a manner that allowed Upsher-Smith to obtain final FDA approval for its potassium supplement and to release that product for sale more than five years before the expiration of the Schering patent (the "settlement agreement").

The FTC conducted an investigation of the settlement agreement, and in March 2001, commenced an administrative proceeding attacking the settlement agreement. On March 30, 2001, the FTC filed a complaint naming Upsher-Smith and Schering as respondents. (See Klimczyk Aff. Ex. C.) The FTC complaint alleged that respondents had engaged in conduct that violated Section 5 of the FTC Act.[2] (Id.) The FTC complaint sought various forms of equitable relief, including an order that each respondent "cease and desist" from activity in violation of the Section 5 of the FTC Act. (Id.) According to plaintiff, the FTC's claim arose from a complex interplay between certain market exclusivity provisions for

---

[2] There were two violations set forth in the FTC complaint that named Upsher:

> First Violation Alleged
>
> 68. The agreement between Schering and Upsher-Smith that Upsher-Smith will not compete by marketing any generic version of Schering's K-Dur 20 until September 2001 unreasonably restrains commerce, and is therefore an unfair method of competition, in violation of Section 5 of the FTC Act.
>
> Fourth Violation Alleged
>
> 71. Schering conspired separately with Upsher-Smith and AHP that Schering monopolize the manufacture and sale of potassium chloride supplements approved by the FDA and narrower markets contained therein, and all three respondents acted with specific intent and engaged in overt acts in furtherance of these conspiracies to monopolize the relevant markets, in violation of Section 5 of the FTC Act.

(Klimczyk Aff. Ex. C.)

first-time filers, like Upsher-Smith, conferred by the regulatory authority of the Food and Drug Administration ("FDA") to approve new generic drugs and the FTC's authority to regulate competition. (Pl.'s Mem. at 3.)

**B. The Private Civil Actions**

During the seven-month period following the filing of the FTC complaint, more than forty private civil actions were filed against Upsher-Smith in state and federal courts throughout the country (the "private civil actions"). Each private civil action complaint referenced the FTC proceeding, recited nearly identical factual allegations against Upsher-Smith, and included causes of action for restraint of trade, deceptive trade practices or various antitrust violations under the applicable federal or state antitrust authority. (See Klymczyk Aff. ¶¶ 5-46, Exs. D-SS.)[3] As described by Upsher-Smith, "... each complaint [was] based on the same set of operative facts that underlies the FTC complaint ..." (Compl. ¶ 24.) Many of these complaints repeat verbatim many of the allegations contained in the FTC complaint.

Furthermore, each of the complaints was brought either on behalf of a defined class of consumers, for example, "end users" or "end payors," or by direct purchasers, for example, drugstores or retail pharmacies. In addition to Upsher-Smith, these actions also

[3] Many of these private actions, relying on the FTC's complaint as a base, also assert other statutory causes of actions for violations of state consumer protection statutes.

named as defendants Schering and others. In addition to requests for injunctive relief, these complaints also seek relief in the form of common law causes of action including restitution, unjust enrichment, and disgorgement.[4] Many of these cases were removed

---

[4] The actions asserting common law claims included the following: Palmer, et al. v. Schering-Plough Corp., et al., (Klymczyk Decl., Ex. G) (unjust enrichment); Roseen v. Schering-Plough Corp., et al., ((Klymczyk Decl., Ex. F) (unjust enrichment); HIP Health Plan of Florida, Inc. v. Schering-Plough Corp., et al., (Klymczyk Decl., Ex. I) (unjust enrichment);Steadman v. Schering-Plough Corp., et al., (Klymczyk Decl., Ex. J) (unjust enrichment, theft by deception, outrage); United Food and Commercial Workers Local 56 Health & Welfare Fund v. Schering-Plough Corp., et al., (Klymczyk Decl., Ex. O) (unjust enrichment); Wallace, et al. v. Schering-Plough Corp., et al., (Klymczyk Decl., Ex. P) (unjust enrichment); Maffei v. Schering-Plough Corp., et al., (Klymczyk Decl., Ex. Q) (unjust enrichment); Randolph v. Schering-Plough Corp., et al., (Klymczyk Decl., Ex. S) (unjust enrichment); Reichert v. Schering-Plough Corp., et al., (Klymczyk Decl., Ex. T) (unjust enrichment); Teamsters Health & Welfare Fund of Philadelphia and Vicinity v. Schering-Plough Corp., et al., (Klymczyk Decl., Ex. Y) (unjust enrichment); Pietsch v. Schering-Plough Corp., et al., (Klymczyk Decl., Ex. DD (unjust enrichment); Burns v. Schering-Plough Corp., et al., (Klymczyk Decl., Ex. EE) (restitution, disgorgement); Mechanical Contractors-UA Local 119 Welfare Plan v. Schering-Plough Corp., et al., (Klymczyk Decl., Ex. GG) (unjust enrichment); Great Lakes Health Plan, Inc. v. Schering-Plough Corp., et al., (Klymczyk Decl., Ex. HH) (unjust enrichment, disgorgement); Helling v. Schering-Plough Corp., et al., (Klymczyk Decl., Ex. II) (unjust enrichment); Arkansas Carpenters Health and Welfare Fund v. Schering-Plough Corp., et al., (Klymczyk Decl., Ex.JJG) (unjust enrichment); Commonwealth of Pennsylvania By D. Michael Fisher, Attorney General v. Schering-Plough Corp., et al., (Johnston Aff., Ex. F) (fraud and unjust enrichment); Kellar v. Schering-Plough Corp., et al., (Klymczyk Decl., Ex. NN) (fraud); Seabrook v. Schering-Plough Corp., et al., (Klymczyk Decl., Ex. QQ) (unjust enrichment); Mitchell v. Schering-Plough Corp., et al., (Johnston Aff., Ex. G) (fraudulent concealment).

to, and eventually consolidated in, the United States District Court for the District of New Jersey (the "MDL proceeding").[5]

**C. The Insurance Policy**

Federal issued the first of several claims-made insurance policies to Upsher-Smith with the initial policy, Policy No. 7948-49-36, covering the period April 17, 1998 to April 17, 1999. Upsher-Smith renewed the policy for the period of April 17, 1999 to April 17, 2000, and again for the period April 17, 2000 to April 17, 2001, Policy No. 7948-49-36B. The policy included a $5,000,000 limit of liability. The policy further contains five separate insuring clauses. The parties agree that only insuring clause 5, entitled "Insured Organization Coverage," could potentially afford coverage for the underlying litigation against Upsher-Smith.

Insuring clause 5 states as follows:

> Insured Organization Coverage
> The Company shall pay on behalf of any Insured Organization all Loss for which it becomes legally obligated to pay on account of any Claim first made against the Insured

---

[5] Presently there are 38 cases in which Upsher-Smith has been named as a defendant pending before the Honorable Joseph A. Greenaway, Jr., in the United States District Court, District of New Jersey. Those actions are brought by both direct and indirect purchasers. Plaintiffs in 17 of the indirect purchaser actions in the MDL proceeding have joined in and filed a consolidated complaint. Plaintiffs in 17 of the other indirect purchaser actions in the MDL proceeding have filed an omnibus motion to remand and have not yet joined in the consolidated complaint. In the event that motion to remand is denied, Upsher-Smith believes that these plaintiffs will be joined in the consolidated complaint. (Pl.'s Mem. at 5.)

> Organization during the Policy Period or, if exercised, during the Extended Reporting Period, for a Wrongful Act committed, attempted, or allegedly committed or attempted, by any Insured before or during the Policy Period.

(Johnston Aff. Ex. A.)

Section 16 of the policy sets forth Federal's duty to defend, providing:

> The Company shall have the right and duty to defend any Claim covered by this Policy. Coverage shall apply even if any of the allegations are groundless, false or fraudulent. The Company's Duty to Defend shall cease upon exhaustion of the Company's applicable Limit of Liability set forth in Item 4 of the Declarations.

(Id.)

A claim under clause 5 is defined as:

> (a) a written demand for monetary damages, (b) a civil proceeding commenced by the service of a complaint or a similar pleading, or (c) a criminal proceeding commenced by a return of an indictment, against an Insured Organization for a Wrongful Act, including any appeal therefrom.

(Id.)

The policy defines "Wrongful Act" as "any error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted, or allegedly committed or attempted by ... any Insured Organization." (Id.)

The Limits of Liability section of the Policy provides:

> All Loss arising out of the same Wrongful Act and all Interrelated Wrongful Acts of any

> Insured shall be deemed one Loss, and such Loss shall be deemed to have originated in the earliest Policy Period in which a Claim is first made against any Insured alleging any such Wrongful Act or Interrelated Wrongful Acts.

(Klymczyk Aff. Ex. A.)

The policy defines "Loss" as:

> ... the total amount covered under this Policy which any Insured becomes legally obligated to pay on account of any Claim made against any Insured for Wrongful Acts, including, but not limited to, damages, judgments, settlements, costs, and Defense Costs.

(Id.)

The policy then defines "Defense Costs" as "that part of Loss consisting of reasonable costs, charges, fees, ... incurred in defending any Claim ...." (Id.)

The "Insured Organization Endorsement" amended the policy adding Section 13.2 which contained the following exclusions:

> The Company shall not be liable under Insuring Clause 5 for Loss [including Defense Costs] on account of any Insured Organization Claim against an Insured Organization:
> (a) based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by an Insured Organization if a judgment or other final adjudication adverse to such Insured Organization establishes such a deliberate fraudulent act or omission or willful violation;
> (b) based upon, arising from, or in consequence of an Insured Organization having gained in fact any profit or advantage to which such Insured Organization was not legally entitled;

> (c) based upon, arising from, or in consequence of any actual or alleged infringement or copyright, patent ...
> (d) based upon, arising from, or in consequence of any actual or alleged violation of the Interstate Commerce Act of 1887, the Sherman Antitrust Act of 1890, the Clayton Act of 1914, the Robinson-Patman Act of 1936, the Cellar-Kefauver Act of 1950, the Competition Act, the Federal Trade Commission Act of 1914, Amendments thereto, or any other federal, state, provincial, or local statutory or common law designed to prevent monopoly, preclude price fixing, or otherwise protect competition. ...
> (g) based upon, arising from, or in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered for or against Insured Organization on or prior to 04/17/98, or the same or any substantially similar facts, circumstances or situation underlying or alleged therein.

(Id.)

Based upon this policy, Upsher-Smith tendered the defense of both the FTC proceeding and all of the private civil actions to Federal. Federal rejected the tender based on Exclusion 13.2(d) which the parties call the "antitrust exclusion." In response to the denial of coverage, Upsher-Smith filed the present declaratory judgment action on August 2001 seeking to enforce Federal's duty to defend pursuant to the applicable terms of the policy. Federal countered that in light of the clear exclusionary language set forth at § 13.2(d), it has no duty to defend Upsher-Smith.

The parties now have filed cross motions for summary judgment asserting that because there are no material facts in dispute, this

matter is ripe for resolution based upon the court's interpretation and application of the relevant policy language.

**DISCUSSION**

The interpretation and construction of insurance coverage language is a question of law. Meister v. Western Nat'l Mut. Ins. Co., 479 N.W.2d 372, 376 (Minn. 1992); Winthrop & Weinstine v. Travelers Cas. & Surety Co., 993 F. Supp. 1248, 1253 (D. Minn. 1998) (under Minnesota law the interpretation and construction of an insurance contract is a question of law). Thus, this court may properly decide issues regarding the interpretation and construction of an insurance contract on summary judgment. Id.; John Deere Ins. Co. v. Shamrock Indus., Inc., 929 F.2d 413, 417 (8th Cir. 1991). Moreover, given the procedural posture of this case based on the parties' cross-motions for summary judgment, the court concludes that the determination of this case turns on the court's construction of the antitrust exclusion.

The court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A nonmoving party cannot rest upon mere denials or allegations nor may the nonmoving

party simply argue that facts supporting its claim will be developed later or at trial. See id.

When interpreting an insurance policy, the court must ascertain and give effect to the intent of the parties as reflected in the insuring contract. See St. Paul Fire & Marine Ins. Co. v. Futura Coatings, Inc., 993 F. Supp. 1258, 1261 (D. Minn. 1998). Furthermore, the "insurance contract must be construed as a whole, with unambiguous language given its plain and ordinary meaning." Id. It is axiomatic that "the duty to defend is much broader than the duty to indemnify." See Home Ins. Co. v. Waycrosse, Inc., 990 F. Supp. 720, 727 (D. Minn. 1996). An insurer's duty to defend is determined by the allegations in the underlying complaint. See Fireman's Fund Ins. Co. v. Hartford Fire Ins. Co., 73 F.3d 811, 816 (8th Cir. 1996). If even a part of a claim is arguably within the policy's coverage, the insurer must defend. United States Liability Ins. Co. v. Johnson & Lindberg, 617 F. Supp. 968, 972 (D. Minn. 1985).

To enforce an insured's reasonable expectations of coverage under the insuring provisions of the policy, it is equally well-settled that exclusions are strictly construed in favor of the insured, and that the insurer bears the burden of establishing the applicability of any exclusion to avoid its duty to defend. Chicago Title Ins. Co. v. Resolution Trust Co., 53 F.3d 899, 905 (8th Cir. 1995); Watson v. United Services Auto Assn., 566 N.W.2d

683, 692 (Minn. 1997) (holding that an insurance policy is to be construed as a whole, with any ambiguity and all doubts regarding the duty to defend resolved in favor of the insured). Policy language is ambiguous if it is reasonably susceptible to more than one interpretation, the terms used are susceptible to more than one meaning, or if there is "an irreconcilable conflict between terms or provisions within the policy." O'Shaughnessy v. Smuckler Corp., 543 N.W.2d 99, 101 (Minn. Ct. App. 1996); ICC Leasing Corp. v. Midwestern Mach. Co., 257 N.W.2d 551, 554 (Minn. 1977); Morris v. Weiss, 414 N.W.2d 485, 487 (Minn. Ct. App. 1987) (citing Columbia Heights Motors, Inc. v. Allstate Ins. Co., 275 N.W.2d 32, 34 (Minn. 1979)). Whether language in an insurance policy is ambiguous is a question of law to be decided by the court. Columbia Heights Motors, Inc. v. Allstate Ins. Co., 275 N.W.2d 32, 34 (Minn. 1979).

The parties do not dispute that the complaints in the FTC proceeding and the private civil actions fall within the policy definitions of wrongful acts and claims, thereby seeming to initially trigger Federal's duty to defend. In dispute is the legal question of whether those claims fall within the antitrust exclusion as set forth at § 13.2(d) so as to exclude them from coverage and eliminate Federal's duty to defend.[6]

---

[6] Defendant has alternatively asserted that exclusions 13.2(c) and 13.2(g) provide additional bases for Federal to deny coverage. Plaintiff opposes this assertion on various grounds. The court will not address those issues in light of its determination to (continued...)

Defendant asserts that because the causes of action alleged in the FTC complaint and each private civil action complaint fall squarely within the antitrust exclusion, defendant has no duty to defend plaintiff, and defendant is entitled to summary judgment as a matter of law. Plaintiff counters that it is entitled to summary judgment because the antitrust exclusion: (1) is inapplicable to the common law and non-antitrust statutory claims in the private civil actions, (2) is internally ambiguous, or (3) alternatively, is ambiguous when read in *pari materia* with the other operative language of the policy. The court agrees with defendant, however, that a detailed analysis of the insurance policy in question, the FTC complaint, and all of the complaints in the 42 underlying private civil actions, compels the court to conclude that all of those claims fall squarely within the policy's unambiguous antitrust exclusion as set forth in § 13.2(d).

The FTC complaint alleges two violations of § 5 of the FTC Act. The first violation alleges that the agreement between Schering and Upsher-Smith constitutes an unreasonable restraint of

---

[6](...continued) grant defendant summary judgment on the basis of the antitrust exclusion set forth at § 13.2(d).

commerce while the second alleges that Schering and Upsher-Smith conspired to monopolize the market.[7] Each violation falls directly within the scope of the antitrust exclusion.[8]

Similarly, while some of the numerous private civil action complaints include common law causes of action, those common law causes of actions flow directly from the underlying antitrust allegations. The court therefore does not agree with plaintiff's assertion that the antitrust exclusion, when construed, only excludes the "discreet antitrust claims" and does not apply to exclude the common law and non-antitrust statutory claims.

---

[7] The specific language of the two violations in the FTC complaint states:

> The agreement between Schering and Upsher-Smith that Upsher-Smith will not compete by marketing any generic version of Schering's K-Dur 20 until September 2001 unreasonably restrains commerce, and is therefore an unfair method of competition, in violation of Section 5 of the FTC Act.
>
> Schering conspired separately with Upsher-Smith and AHP that Schering monopolized the manufacture and sale of potassium chloride supplements approved by the FDA and narrower markets contained therein, and all three respondents acted with specific intent and engaged in overt acts in furtherance of these conspiracies to monopolize the relevant markets, in violation of Section 5 of the FTC Act.

[8] The exclusion also clearly states that the insurer is not liable on any claim "based upon, arising from, or in consequence of any actual or *alleged* violation" (emphasis added). Therefore, the outcome of the underlying FTC proceeding is irrelevant for purposes of the present motion.

A careful review of the underlying complaints supports defendant's position since the factual basis for all of the "separate common law and non-antitrust claims" is the underlying antitrust actions.[9] Those claims do not stand independently of the underlying antitrust allegations.[10] For example, in a count asserting fraudulent suppression, it is provided, as the basis for that claim, that "[d]efendants suppressed material facts ... that the settlement agreements ... would eliminate healthy competition [and] that the effect of their settlement agreements ... was to reduce competition... ." (Klymczyk Aff. Ex. J at 15.) Similarly, another claim for fraudulent concealment states, after realleging the underlying antitrust basis for the action, "[d]efendants have been able to conceal ... the truth about charging artificially inflated prices... ." (Id. Ex. R at 28.) The court is not persuaded that these claims reflect separate common law or distinct non-antitrust claims.[11]

---

[9] Plaintiff acknowledges in both its complaint and summary judgment brief that the causes of action found in the private civil action complaints are "based on the same set of operative facts that underlies the FTC complaint." (Complaint ¶ 24; Mem. at 31.)

[10] The court also notes that the claims found in the consolidated class action complaint in the MDL action similarly arise out of "[d]efendants' illegal scheme to monopolize and allocate the market." (Johnston Aff. Ex. E at 3.)

[11] The court is not persuaded that the count for "common law fraud" asserted in the Kellar action is demonstrative of a separate non-antitrust claim since it is not directly asserted against plaintiff. (Id. Ex. NN.)

Furthermore, many of the non-statutory common law causes of action contained in the private civil actions seek forms of relief that are based upon or arising from the alleged antitrust violations that otherwise would be unavailable under the applicable statute. For example, many of the civil actions assert non-statutory causes of action for unjust enrichment, restitution, and disgorgement which, when examined within the context of the respective complaint, is clearly intended as additional remedies for the underlying antitrust allegations. These non-statutory causes of action are directly dependent upon the anti-trust claims and would not otherwise stand alone.[12]

Moreover, contrary to plaintiff's assertion, the court does not find the antitrust exclusion contained in § 13.2(d) of the policy to be ambiguous. Both the Eighth Circuit and the Minnesota courts have considered and upheld insurance policy exclusions with similarly worded exclusionary language. See Callas Enter., Inc. v. Travelers Indemnity Co., 193 F.3d 952, 955 (8th Cir. 1999) (finding similar exclusionary language for injuries "arising out of breach of contract" to be "clear, unambiguous and broad in scope"); Agricultural Ins. Co. v. Focus Homes, Inc., 212 F.3d 407, 411-412 (8th Cir. 2000) ("arising out of" language in an employment exclusion barred duty to defend claims for assault, battery, aiding

[12] The court also notes that each of these non-statutory causes of action expressly incorporate the alleged antitrust allegations as the basis for the separate common law relief.

and abetting, and negligent and intentional infliction of emotional distress); Associated Indep. Dealers, Inc. v. Mut. Service Co., 304 Minn. 179, 229 N.W.2d 516, 518 (1975) (holding that phrase "arising out of" was unambiguous in context of automobile insurance policy). In Minnesota, this "arising out of" language has also been construed to mean "originating from," "having its origins in," "growing out of," or "flowing from." Id.

The prefatory language of the antitrust exclusion found at 13.2(d) thus unambiguously captures any causes of action that arises from, flows from, or has its origins in any actual or alleged antitrust violation. (See Johnston Aff. Ex. A at 2.) With this broad interpretation of the "arising out of" language as applied by Minnesota courts, this court must read all of the counts of the underlying complaints as "flowing from" or "having their origins in" the alleged antitrust violations plaintiff faced in the underlying FTC proceeding. See Associated Indep. Dealers, 229 N.W.2d at 518.

Finally, Upsher-Smith's contention that the "conditional language" of Sections 13.2(a) and 13.2(b) somehow rewrites the antitrust exclusion set forth in Section 13.2(d) so that it "clearly applies only to liability coverage and not to Federal's duty to defend" is not persuasive. Upsher-Smith cannot escape the antitrust exclusion's preclusion of coverage for the allegations contained in the FTC complaint and the private civil action

complaints by pointing to "conditional language" found in other exclusions. See, e.g., St. Paul Fire & Marine Ins. Co. v. Genova, 172 F. Supp.2d 1001, 1008 (N.D. Ill. 2001) ("defendants' effort to obtain expanded coverage from the claimed interaction of two Policy exclusions defies both logic and the plain language of the Policy itself"). The court must compare the allegations of the underlying complaints to the relevant provisions of the insurance policy, and when the allegations fall squarely within an exclusion, as here, the court cannot create ambiguity by juxtaposing other exclusions that are intended to apply to different types of claims. See id. at 1007 ("[a]s defendants would have it, the two exclusionary clauses are inconsistent hence creating an ambiguity ... so as to preclude the application of the crystal-clear language of the exclusion ... [t]hat position is patently unpersuasive ...").[13] Upsher-Smith's efforts to obtain expanded coverage from the claimed interaction of two or more policy exclusions defies the plain language of the policy. See Bobich v. Oja, 258 Minn. 287, 104 N.W.2d 19, 24 (1960) (ambiguity should never be read into the plain

---

[13] The court also concludes that plaintiff's reliance on Moorhead Mach. & Boiler Co. v. Employer's Commercial Union is misplaced since in that case, as here, the Minnesota Supreme Court determined that no ambiguity existed and held that one exception to an exclusion of coverage would not be considered to grant coverage where other exclusions clearly precluded coverage. 285 N.W.2d 465, 469 (Minn. 1979). Moreover, the court in Moorhead clearly determined that "[w]hether an exception to an exclusion is considered a grant of coverage should be determined on the language of the *individual* policy, in light of the normal rules of construction." (emphasis added) Id. at 467.

language of an insurance policy in order to construe it against the insurer). Thus, the court is not convinced by plaintiff's assertion that the exclusionary clauses create an ambiguity that calls for a resolution in plaintiff's favor and to preclude the application of the clear language of the exclusion relied on by Federal.

In sum, the court fails to find ambiguity either in the § 13.2(d) exclusion itself or when read in *pari materia* with the language of the rest of the policy. See Assoc. Ind. Dealers, 229 N.W.2d at 519 ("[w]hile it true that the ['arising out of' exclusion] is broad in scope, we do not believe it to be ambiguous"). And while the language of this exclusion is broad, plaintiff is a sophisticated business entity that agreed to the terms of the policy.

**CONCLUSION**

Since the court finds that the antitrust exclusion in the policy expressly excludes any liability of Federal to defend or indemnify Upsher-Smith in connection with the FTC complaint and the numerous private civil action complaints, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for summary judgment [Doc. No. 24] is granted; and

2. Plaintiff's motion for summary judgment [Doc. No. 26] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 29, 2002

David S. Doty, Judge
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.